UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

JAMES WOODSON,                    )
                                  )
                Plaintiff,        )
                                  )
        v.                        )        Case No. 2:25-cv-00017-JSD
                                  )
NELSON D. ERAVI, et al.,          )
                                  )
                Defendants.       )

## MEMORANDUM AND ORDER

Self-represented Plaintiff James Woodson brings this action under 42 U.S.C. §
1983 for alleged violations of his civil rights.  The matter is now before the Court upon
multiple motions filed by Plaintiff.  First, Plaintiff seeks leave to proceed *in forma
pauperis*, or without prepayment of the required filing fees and costs.  ECF No. 5.  Based
on a review of the financial information submitted in support, the Court will grant the
motion and order no further payment.  Second, Plaintiff filed a motion for an extension of
time to comply with the Court's "Order Dated February 14, 2025."  ECF No. 8.  Because
the Court did not issue an Order in this matter on February 14, 2025, and the Court
cannot determine that there is any outstanding order that Plaintiff has failed to comply
with, this motion will be denied as moot.  Third, Plaintiff filed a motion for prohibition of
retaliation in which he seeks an order prohibiting retaliation against him, without any
argument or legal rationale.  ECF No. 3.  However, because Plaintiff is now proceeding
*in forma pauperis*, the Court must review his pleadings under 28 U.S.C. § 1915.  Based
on such review, the Court will dismiss this case for failure to state a claim upon which

relief may be granted.  *See* 28 U.S.C. § 1915(e)(2)(B).  Since this case is being dismissed, Plaintiff's unsupported motion for prohibition will be denied as moot.

## Motion to Proceed In Forma Pauperis (ECF No. 5)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action *in forma pauperis* is required to pay the full amount of the filing fee.  If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee.

Plaintiff here is a convicted and sentenced state court prisoner.  ECF No. 1 at 2. He filed his Complaint on February 10, 2025, without paying the required filing fee or filing a motion to proceed *in forma pauperis*.  As a result, the Court issued an Order on February 11, 2025, directing Plaintiff to either pay the $405 filing fee or submit a motion to proceed *in forma pauperis*.  ECF No. 4.  On February 13, 2025, Plaintiff filed a motion to proceed *in forma pauperis* with a certified inmate account statement.  ECF No. 5.  A couple of weeks later, Plaintiff paid $350 towards his filing fee.  ECF No. 6.

Over two months have passed since the filing fee payment was made and Plaintiff has not withdrawn his motion to proceed *in forma pauperis*.  Proceeding *in forma pauperis* confers benefits on a litigant aside from payment of the filing fee in installments, including reduced copy rates and service on defendants by the U.S. Marshal's Service.[1]  Because of these additional benefits and because Plaintiff has not withdrawn his motion, the Court will assume that Plaintiff still seeks such status in this

---

[1] The Court notes that Plaintiff did attach an exhibit to his Complaint requesting summons be served by the U.S. Marshals.  *See* ECF No. 1-1 at 1.

case.[2]  After review of the financial information submitted in support of the motion, the Court will grant Plaintiffs' motion to proceed *in forma pauperis*.  No further filing fee payments are required.[3]

## The Complaint (ECF No. 1)

Plaintiff is incarcerated at Moberly Correctional Center (MCC), a Missouri Department of Corrections (MDOC) facility.  ECF No. 1 at 2.  He brings this action under 42 U.S.C. § 1983, against four defendants associated with MCC: (1) Nelson Eravi (correctional officer); (2) MDOC Director; (3) MCC Warden; and (4) Unknown Bucker (investigating officer).  *Id.* at 1-3.  Plaintiff appears to be naming the MDOC Director in his official capacity only, but he names the other three defendants in both their official and individual capacities.  *Id.* (listing both capacities under all defendants except MDOC Director where it states only "OFFICIAL CAPACITY").

Plaintiff alleges that his rights under the Fifth, Eighth, and Fourteenth Amendments have been violated by the MDOC's use of fraudulent drug field tests at MCC, which have resulted in false positives and caused prisoners to be unjustifiably

---

[2] In addition, Plaintiff's recently filed motion suggests that he still seeks *in forma pauperis* status when he states that he "awaits this Court's order determining financial status regarding indigency."  ECF No. 8 at 1.

[3] The fee for bringing a civil action in this Court is $405, which includes a statutory filing fee of $350 and an administrative fee of $55.  *See* 28 U.S.C. § 1914(a) ("The clerk of each district court shall require the parties instituting any civil action, suit or proceeding in such court, whether by original process, removal, or otherwise, to pay a filing fee of $350"); 28 U.S.C. § 1914(b) ("The clerk shall collect from the parties such additional fees only as are prescribed by the Judicial Conference of the United States").  Effective December 1, 2023, the Judicial Conference added a $55.00 administrative fee to the statutory fee for filing a civil action in district court.  *See* Par. 14 of the Judicial Conference Schedule of Fees, District Court Miscellaneous Fee Schedule (issued in accordance with 28 U.S.C. § 1914) (effective on Dec. 1, 2023).  The Judicial Conference expressly provided, however, that the additional $55.00 "fee does not apply to applications for a writ of habeas corpus or to persons granted *in forma pauperis* status under 28 U.S.C. § 1915."  *Id.*  As such, since Plaintiff has already paid the statutory filing fee of $350, and the Court is granting his motion to proceed *in forma pauperis*, no further payment is due.

punished with false conduct violations. *Id.* at 5. According to Plaintiff, these unwarranted punishments result in cruel and unusual punishment and violations of due process. *Id.* at 6.

The facts alleged by Plaintiff are as follows. In March 2024, defendant Eravi confiscated a piece of paper wrapped in tape from Plaintiff's left coat pocket. The paper was "field tested" (by an officer not named as a defendant in this matter) and was found to be positive for synthetic marijuana. *Id.* at 4 & 6. As a result of this test result, Plaintiff received a conduct violation from Eravi for possession of a controlled substance. Plaintiff was recommended to receive sanctions of ten (10) days in disciplinary segregation, no visits for thirty (30) days, and referral to the review board. *Id.* at 4. Plaintiff does not state what punishment he eventually received.

Plaintiff asserts multiple claims regarding this allegedly false conduct violation. First, Plaintiff alleges that defendant Eravi could not "truthfully" write him up for a violation since Eravi did not "observe himself" the testing of the substance by a different officer. *Id.* at 6. Plaintiff argues that this violates his due process and equal protection rights. *Id.* at 7. Second, Plaintiff cites cases in support of the argument that "no field test for synthetic marijuana is available" and that field tests for synthetic marijuana are underinclusive, fundamentally flawed, and produce false-positive results. *Id.* at 5-6, 8. According to Plaintiff, these samples must be tested by a chemist at the state crime lab. *Id.* at 8. Third, Plaintiff alleges that the paper removed from his pocket was tampered with prior to the testing because the paper had tape around it when it was confiscated

4

from him, but the test results do not mention the piece of tape around the paper.  *Id.* at 7.

Therefore, Plaintiff states that it "was not the same evidence."  *Id.*

Plaintiff states that he suffered defamation of his character as a result of the allegedly false conduct violation.  *Id.* at 8.  He also claims that these false field-test results violate prisoners' liberty rights by causing them to lose good time credits and extends their "out date."  *Id.* at 6.  It is unclear what injury Plaintiff himself experienced; he states only that he suffered an "irreparable injury," but he does not state what it was. *Id.* at 9.  As to defendant MDOC Director, Plaintiff alleges that the MDOC was negligent in the handling of his grievance[4] appeal on this issue.  *Id.*

Plaintiff seeks declaratory relief, injunctive relief, and monetary damages.  *Id.* at 10-16.

### Motion for Prohibition (ECF No. 3)

When Plaintiff filed his Complaint in this matter, he also filed a "Motion of Prohibition of Retaliation," in which he seeks an order prohibiting defendants and their "family, friends, [and] co-workers" from "any retaliatory actions" against Plaintiff, including "physical abuse, verbal abuse, [and] threats."  ECF No. 3 at 1.  Plaintiff's motion provides no argument or rationale as to why such an order is necessary in this case.

---

[4] Although Plaintiff makes multiple references to documents being attached to the complaint—including his conduct violation and grievance documents—no such exhibits were filed with the Complaint.  *See* ECF No. 1 at 5 (stating "SEE ATTACHED ADMINISTRATIVE REMEDIES"); at 7 (stating "THE CONDUCT VIOLATION (EXHIBIT - A)"); at 9 (stating "SEE ALL ATTACHED CONDUCT VIOLATIONS AND ADMINISTRATIVE REMEDIES"). Regardless, the Court accepts as true Plaintiff's allegations as to what these documents contained, for the purposes of this Order.

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court may dismiss a complaint filed *in forma pauperis* if the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. When reviewing a complaint filed by a self-represented person under 28 U.S.C. § 1915, the Court accepts the well-pleaded facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984), and it liberally construes the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits the claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even self-represented plaintiffs are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff).

To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a

6

plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

### Discussion

After careful review and liberal construction of Plaintiff's pleadings, the Court finds that this case must be dismissed for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States. *West v. Atkins*, 487 U.S. 42, 48 (1988). Plaintiff here brings this case to argue that his receipt and punishment for an allegedly false conduct violation, resulted in a violation of his constitutional rights. However, as discussed below, the facts asserted are not sufficient to support a §1983 claim against any named defendant.

### I.     Defendant Correctional Officer Eravi

Plaintiff alleges that MCC correctional officer Eravi violated his constitutional rights when he wrote him up for a conduct violation for possession of a controlled substance based on a false-positive "field test" of a piece of paper confiscated from Plaintiff's pocket. Plaintiff claims that defendant Eravi acted with "unjustifiable prosecution" in violation of Plaintiff's due process rights and his rights to avoid cruel and unusual punishment and excessive punishment. However, Plaintiff does not allege that defendant Eravi intentionally falsified the results of the drug test, or that Eravi himself tampered with the piece of paper in Plaintiff's pocket. Instead, Plaintiff asserts that Eravi should not have relied on an allegedly incompetent testing method, conducted by a different officer, on a tampered-with subject matter, to issue Plaintiff a conduct violation.

"Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990); *see also Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (to be cognizable under § 1983, a claim must allege that the defendant was personally involved in or directly responsible for the incidents that deprived the plaintiff of his constitutional rights). To the extent that Plaintiff is arguing that the method used for testing the paper for drugs was invalid or unreliable, defendant Eravi did not conduct that test and is therefore not personally liable. Plaintiff fails to allege that Eravi was personally involved in or directly responsible for the false-positive test result.

Furthermore, accepting Plaintiff's allegations as true—that the paper did not contain synthetic marijuana—a false conduct violation is not actionable under § 1983. *See Glick v. Sargent*, 696 F.2d 413, 414 (8th Cir. 1983) (per curiam); *see also Willis v. Ciccone*, 506 F.2d 1011, 1018 (8th Cir. 1974) (stating that "the role of the district court is not to afford a de novo review of the disciplinary board's factual findings" or it "would assume the task of retrying all prison disciplinary disputes"); *Mueller v. Norman*, 2011 WL 1330816, at *2 (E.D. Mo. Apr. 7, 2011) (stating that an allegation regarding a disputed conduct violation does not articulate a constitutional or federal statutory violation). As such, Plaintiff's claim regarding an allegedly false conduct violation resulting from an allegedly false-positive drug test, does not state a constitutional violation under § 1983 against defendant correctional officer Eravi.[5] This Court does not

---

[5] To the extent Plaintiff is attempting to assert a procedural due process claim against defendant Eravi based on any resulting disciplinary hearing and punishment that Plaintiff received as a result of the conduct violation, such a claim

sit in review of prison disciplinary hearings.  Plaintiff's Complaint fails to state a claim upon which relief may be granted against defendant Eravi and he must be dismissed.

## II.    Defendant MDOC Director

Plaintiff's allegations against defendant MDOC Director are not clear.  Plaintiff asserts that the MDOC Director acted with "plain incompetence" and "wrongful actions" in violation of Plaintiff's right to avoid cruel and unusual punishment.  ECF No. 1 at 4 & 13.  However, Plaintiff provides no facts in support of these claims.  Plaintiff does not mention the MDOC Director in either the "All Facts Relevant to this Civil Action" section or the "Statement of Facts" section of his Complaint.  *Id.* at 4-9.

Importantly, Plaintiff names the MDOC Director in his official capacity only.  *Id.* at 2.  In an official capacity claim against an individual, the claim is actually "against the governmental entity itself."  *White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017) (internal citation omitted).  Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer."  *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999).  Defendant MDOC Director is an employee of the MDOC.

Naming a state official in his or her official capacity is the equivalent of naming the government entity that employs the official – the State itself.  *Will v. Mich. Dep't of*

---

fails.  There are no facts alleged that Eravi was involved in any such proceeding and no arguments made as to what process Plaintiff was denied.

Furthermore, to the extent Plaintiff is attempting to bring claims and/or assert alleged violations on behalf of other inmates for false-positive test results, these claims also fail.  *See* ECF No. 1 at 5-6 (alleging that defendants' actions violate due process by taking "offenders" good-time credit and extending "prisoner's" time in prison).  Plaintiff has no standing to bring claims on behalf of other prisoners.  *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).

*State Police*, 491 U.S. 58, 71 (1989). "Section 1983 provides for an action against a 'person' for a violation, under color of law, of another's civil rights." *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008). However, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will,* 491 U.S. at 71. Furthermore, the State of Missouri is also shielded by Eleventh Amendment[6] immunity, which bars a citizen from bringing suit in federal court against a state. *Alabama v. Pugh*, 438 U.S. 781, 782 (1978). As such, to the extent Plaintiff seeks money damages against the MDOC Director in his official capacity, Plaintiff fails to state a § 1983 claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B).

To the extent Plaintiff names the MDOC Director in his official capacity as an avenue to seek injunctive relief against the State of Missouri, this claim also fails. Plaintiff seems to be arguing that the State of Missouri's method of testing inmate contraband for synthetic marijuana is faulty, in violation of his constitutional rights. To support this claim, Plaintiff cites to three cases that he states have discredited the accuracy of field tests for synthetic marijuana. ECF No. 1 at 5 & 6. First, Plaintiff quotes from a district court dismissal of a § 2254 habeas petition that includes a recital of the state court's presumed-to-be facts. *Id.* (citing *Zahraie v. Cheeks*, No. 1:17-cv-13131, 2024 WL 1332000, at *2 (E.D. Mich. Mar. 28, 2024)). In that recital of facts, there is reference to a 2013 statement by a Michigan police officer that "no field test for synthetic

---

[6] The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

marijuana is available."  In that case, samples were sent to a crime laboratory for analysis instead.  Second, Plaintiff cites to a case that mentions that field tests for synthetic marijuana became available around August 2013 in certain areas of Florida.  *Id.* (citing *Pando v. Blair*, No. 5:15-cv-610, 2017 WL 3835858, at *4-5 (M.D. Fla. Aug. 10, 2017) (discusses how a field test for the presence of synthetic marijuana did not become available for use by Florida police officers until August 2013).  Third, Plaintiff cites to a Massachusetts district court case brought by prison inmates against manufacturers of field drug tests used by the state department of corrections, alleging that tests results were inaccurate when conducted between 2017 and 2020.  *Id.* (citing *Green v. Sirchie Acquisition Co. LLC*, 633 F. Supp.3d 393 (D. Mass. 2022) (discussing plaintiff's state law negligence and deceptive trade practices allegations against two specific drug test manufacturers who allegedly knew and concealed the inaccuracy of their tests during the relevant time period)).

None of these three cases support a claim that the State of Missouri violated Plaintiff's rights by using an inaccurate field test for synthetic marijuana.  Although there was a period when a field test for synthetic marijuana was not available, these cases do not establish that fact to be true in March 2024 when the paper in Plaintiff's pocket tested positive.  In addition, there is no evidence that the non-defendant officer who tested the paper in Plaintiff's pocket used a "field test" similar to the ones contested in *Green v. Sirchie Acquisition Co.*  It isn't even clear that the officer used a "field test" versus some other kind of laboratory test for synthetic marijuana.  Finally, just because some prisoners questioned the accuracy of certain drug tests used from 2017-2020 by the Massachusetts

department of corrections, there is no evidence that the testing methods currently being used by MDOC are faulty.  Plaintiff has failed to state a § 1983 claim against the State of Missouri regarding a policy of using inaccurate field tests for synthetic marijuana.

Lastly, even if Plaintiff had named the MDOC Director in his individual capacity, liability under § 1983 requires personal involvement or direct responsibility for a violation of rights.  *See Madewell*, 909 F.2d at 1208; *Martin*, 780 F.2d at 1338.  Plaintiff provides no facts suggesting that the MDOC Director is directly responsible for, or personally involved in, any alleged violation of Plaintiff's rights.  Furthermore, the MDOC Director cannot be held vicariously responsible for the actions of employees he supervises.  *See Tlamka v. Serrell*, 244 F.3d 628, 635 (8th Cir. 2001) ("A supervisor may not be held liable under § 1983 for the constitutional violations of a subordinate on a respondeat superior theory.") (*citing Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995).  Nor can the MDOC Director be held liable based on his decisions on administrative grievance filings.  *See George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) ("Only persons who cause or participate in the [constitutional] violations are responsible. ... Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation.").

For all these reasons, Plaintiff's claims against the MDOC Director are subject to dismissal for failure to state a claim upon which relief may be granted.  28 U.S.C. § 1915(e)(2)(B).

## III.    Defendant MCC Warden

Similar to defendant MDOC Director, Plaintiff provides no factual allegations directed at defendant MCC Warden.  Plaintiff asserts that the MCC Warden acted with

"plain incompetence," "wrongful actions," and "negligence of administrative duty" in violation of Plaintiff's right to avoid cruel and unusual punishment.  ECF No. 1 at 4, 9, & 13.  However, Plaintiff provides no facts in support of these claims.

Because the same reasons for dismissal that were discussed above in relation to defendant MDOC Director apply to defendant MCC Warden, Plaintiff's claims against this defendant will also be dismissed.  The MCC Warden is an employee of the State of Missouri, and therefore no valid § 1983 claim for money damages can be stated against him in his official capacity.  *See Will,* 491 U.S. at 71; *Alabama*, 438 U.S. at 782.  In addition, Plaintiff fails to state a policy claim against the State of Missouri concerning its use of certain testing methods for synthetic marijuana in DOC facilities.  And because § 1983 requires personal liability, and Plaintiff makes no factual allegations that the Warden was personally involved in or directly responsible for a violation of his rights, any individual capacity claim also fails.  *See Madewell*, 909 F.2d at 1208; *Martin*, 780 F.2d at 1338.  Finally, "a warden's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement."  *Reynolds v. Dormire,* 636 F.3d 976, 981 (8th Cir. 2011) (quoting *Ouzts v. Cummins*, 825 F.2d 1276, 1277 (8th Cir. 1987) (per curiam)).  As such, Defendant MCC Warden shall be dismissed for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B).

## IV.    Defendant Investigating Officer Bucker

The last defendant named by Plaintiff is an Officer Bucker, who Plaintiff describes as an "investigating officer."  ECF No. 1 at 1, 3, & 4.  Plaintiff alleges that Bucker acted with "plain incompetence" and "wrongful actions" of "negligence of [his] official

duties." *Id.* at 4 & 9.  In the "Relief" section of his Complaint, Plaintiff mentions that Bucker conducted an allegedly "fraudulent investigation," but Plaintiff does not state what Bucker was investigating, what the investigation revealed, or what was fraudulent about it.  *Id.* at 15.

Plaintiff's Complaint fails to state a claim against Unknown Bucker because it merely lists Bucker as a defendant without alleging he committed any wrongdoing.  *See Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003) (affirming dismissal of *pro se* complaint against defendants who were merely listed as defendants in the complaint and there were no allegations of constitutional harm against them).  Because § 1983 requires personal liability and Plaintiff has provided no facts that support a claim that Bucker was personally involved in or directly responsible for any violation of Plaintiff's rights, this claim fails.  *See Madewell*, 909 F.2d at 1208; *Martin*, 780 F.2d at 1338.  Plaintiff's Complaint fails to state a claim upon which relief may be granted as to defendant Unknown Bucker.  28 U.S.C. § 1915(e)(2)(B).

## Conclusion

Based on the financial information provided, Plaintiff's motion to proceed *in forma pauperis* will be granted and no further payment is required.  Plaintiff's motion for an extension of time to comply with the Court's Order will be denied as moot because the Court is not awaiting anything from Plaintiff.  Finally, based on a review of the pleadings under 28 U.S.C. § 1915(e)(2)(B), Plaintiff's Complaint must be dismissed for failure to

state a claim upon which relief may be granted.  As such, Plaintiff's pending motion for prohibition will be denied as moot as well.[7]

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion for leave to proceed *in forma pauperis* [ECF No. 5] is **GRANTED** and no further filing fee payments are due.

**IT IS FURTHER ORDERED** that the Clerk shall **not** issue process or cause process to issue upon the Complaint as to any defendant because the Complaint fails to state a claim upon which relief can be granted.  Plaintiff's claims against defendants Nelson D. Eravi, Missouri Department of Corrections Director, Warden – Moberly Correctional Center, and Unknown Bucker are **DISMISSED without prejudice**.  *See* 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that Plaintiff's motion for prohibition of retaliation is [ECF No. 3] is **DENIED as moot**.

**IT IS FURTHER ORDERED** that Plaintiff's motion for extension of time [ECF No. 8] is **DENIED as moot**.

**IT IS HEREBY CERTIFIED** that an appeal from this dismissal would not be taken in good faith.

An Order of Dismissal will accompany this Memorandum and Order.

---

[7] To the extent Plaintiff is attempting to bring any Missouri state-law claims for defamation or slander, because his federal claims are being dismissed, all remaining pendent state claims will be dismissed as well.  *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) (if federal claims are dismissed before trial, remaining state claims should also be dismissed); *Hassett v. Lemay Bank & Trust Co.*, 851 F.2d 1127, 1130 (8th Cir. 1988) (where federal claims have been dismissed, district courts may decline jurisdiction over pendent state claims as a matter of discretion).

Dated this 17th day of June, 2025.

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE